NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13789

JERMAINE BERRY vs.  COMMONWEALTH.

Suffolk.     November 3, 2025. - March 12, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Georges, Dewar,
& Wolohojian, JJ.


Practice, Criminal, Postconviction relief, Sentence, Psychiatric
     examination, Reciprocal discovery, Discovery.
     Constitutional Law, Sentence.  Evidence, Expert opinion.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on May 28, 2025.

     The case was heard by Wendlandt, J.


     Elizabeth Caddick for the petitioner.
     Elisabeth Martino, Assistant District Attorney, for the
Commonwealth.


     GEORGES, J.  This case presents a narrow question:

whether, in postconviction resentencing proceedings under Mass.

R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001) (rule

30), a judge may permit limited discovery in the form of a

court-ordered psychiatric examination of a defendant[1] who elects to rely on expert opinion derived from a personal examination.

The defendant was convicted of several nonmurder offenses committed as an emerging adult. He received an aggregate State prison sentence requiring at least thirty-one years of incarceration before parole eligibility, which exceeds the parole eligibility that is now applicable to emerging adult offenders convicted of murder in the first degree. See Commonwealth v. Mattis, 493 Mass. 216, 237 (2024). Relying on Mattis, the defendant moved for resentencing under rule 30, asserting that his sentence violates art. 26 of the Massachusetts Declaration of Rights.

In preparation for the resentencing hearing, the defendant retained an expert who conducted a psychological examination and provided a report to the Commonwealth based on that examination. The Commonwealth then moved for a reciprocal court-ordered psychiatric examination by its own expert, which a Superior Court judge (motion judge) allowed. The examination authorized by the motion judge was expressly premised on the judge's expectation that the defendant would present expert testimony at the resentencing hearing regarding his own expert's recent

---

[1] Although Jermaine Berry commenced this action by filing a petition in the county court, for convenience, we refer to him as the defendant.

psychological evaluation of the defendant.  Before the court-ordered examination occurred, the defendant filed a petition in the county court seeking relief from that order.  A single justice denied the petition, and the defendant appealed.

For the reasons that follow, we conclude that the single justice did not err or abuse her discretion in denying relief. The judgment of the single justice is therefore affirmed.

Background.  In 2005, the defendant was convicted of multiple offenses, including assault with intent to kill, stemming from his shooting at police officers two years earlier. He was twenty years old at the time of the offenses.  The defendant received consecutive sentences totaling from thirty-one to forty-three years in State prison, with parole eligibility after thirty-one years, followed by fifteen years of probation.  The Appeals Court affirmed the convictions in 2011. See Commonwealth v. Berry, 80 Mass. App. Ct. 1115 (2011).

In July 2024, the defendant moved for resentencing under rule 30.  In connection with that motion, he sought and obtained funds for expert assistance and retained Dr. Maryanne Galvin, a licensed and board-certified forensic psychologist who previously had testified on his behalf at his trial.  After meeting with the defendant for approximately seven hours over two days in December 2024, Galvin issued a report based "in large part" on those interviews.

The report addressed the defendant's mental health history from childhood through the time of the offenses and his conduct during incarceration. Galvin also administered the Historical Clinical Risk Management-20, Version 3 Scale (HCR-20V3), a structured professional judgment tool used to assess risk of violence through interview data and records review. Based on that assessment, Galvin rated the defendant's risk of imminent violence, serious harm, and over-all "summary risk" as low and ultimately opined that he had been rehabilitated.

Following disclosure of the report, the Commonwealth moved for an order requiring the defendant to submit to an independent examination by its expert, Dr. David Kroll. Drawing an analogy to the reciprocal examination procedures outlined in Mass. R. Crim. P. 14.4, 495 Mass. 1515 (2024) (rule 14.4),[2] the Commonwealth argued that the defendant had placed his mental condition at issue by indicating he would rely on expert opinion derived from a personal psychological examination, thereby

_____

[2] The Commonwealth -- and, subsequently, the motion judge -- referred to the prior Mass. R. Crim. P. 14 (b) (2), as appearing in 463 Mass. 1501 (2012). As of March 2025, rule 14.4 "replace[d]" rule 14 (b) (2) with "no substantive changes." Reporter's Notes (2025) to Mass. R. Crim. P. 14.4, Massachusetts Rules of Court, Rules of Criminal Procedure, at 176 (Thomson Reuters 2025). To avoid confusion, when addressing the motion judge's decision in this opinion, we refer to rule 14.4.

justifying a comparable examination by the Commonwealth's expert.

The motion judge agreed. Anticipating that the defendant would present expert testimony regarding "his mental health and rehabilitation" at resentencing, the judge reasoned that fairness required that the Commonwealth's expert "be afforded the same opportunity" to evaluate the defendant's mental condition and rehabilitation. The judge therefore allowed the Commonwealth's motion.

The defendant petitioned a single justice of the county court pursuant to G. L. c. 211, § 3, seeking to vacate the order. The single justice denied relief without a hearing, concluding that the motion judge did not abuse her discretion in allowing the examination. The defendant now appeals, pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001).[3]

Discussion. In reviewing a petition under G. L. c. 211, § 3, a single justice first determines whether to reach the

---

[3] The defendant moved to expand the record to include the transcript of a hearing that occurred after the single justice denied the petition. He asserts that, at the hearing, the motion judge suggested that the Commonwealth would be entitled to a compelled psychiatric examination even if the defendant ultimately chose not to rely on expert testimony at the resentencing. We deny the motion and decline to consider the subsequent hearing in evaluating the validity of the challenged order. See Campiti v. Commonwealth, 426 Mass. 1004, 1005 (1997) (declining to review matters arising after proceeding before single justice).

merits.  See Commonwealth v. Fontanez, 482 Mass. 22, 24 (2019).

Because the single justice reached the merits here, we do so as

well, reviewing her decision for abuse of discretion or other

error of law.  See Commonwealth v. Clark, 454 Mass. 1001, 1002

(2009).  To the extent the ruling turns on a question of law,

our review is de novo.  See Lewis v. Commonwealth, 497 Mass. 99,

101 (2026).

The examination order was issued in connection with the

defendant's motion for resentencing under rule 30.  It is

therefore properly analyzed as a postconviction discovery order

pursuant to rule 30 (c) (4), rather than as one implicating

trial-stage procedures governing competency or criminal

responsibility.  Whether rule 30 permits a court-ordered

psychiatric examination presents a question of law that we

review de novo, see Lewis, 497 Mass. at 101, whereas the motion

judge's decision to allow such discovery is reviewed for abuse

of discretion, see Commonwealth v. Stewart, 383 Mass. 253, 261

(1981) (postconviction discovery under rule 30 "is properly left

to the judge's discretion").[4]

---

[4] The defendant asserted for the first time in his G. L.
c. 211, § 3, petition that the motion judge's order violates
several constitutional rights, including his right against self-
incrimination under the Fifth Amendment to the United States
Constitution and art. 12 of the Massachusetts Declaration of
Rights.  These issues were not raised before the motion judge,
and we therefore decline to address them.  See Yatia Y. v. Safi,
495 Mass. 1033, 1035 (2025) ("review under G. L. c. 211, § 3,

1.  Postconviction discovery under rule 30.  Postconviction discovery is not limited to documentary material but may encompass other forms of evidence.  See Reporters' Notes to Rule 30, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 607 (LexisNexis 2025) (judge may order production of "evidence or statements," which "in an unusual case may include depositions").  See also Commonwealth v. Gaulden, 383 Mass. 543, 552 (1981) ("we appropriately may look to the reporters' notes for guidance" in construing meaning of rules of criminal procedure).  Where a defendant, in moving for postconviction relief, relies on expert opinion grounded in a personal examination, a judge may determine that a limited reciprocal examination is an appropriate form of discovery to assess the weight and credibility of that evidence.  Cf. Commonwealth v. Ostrander, 441 Mass. 344, 354, cert. denied, 543 U.S. 867 (2004) (cross-examination of defendant's expert on voluntariness of confession "is an inadequate substitute for actual testimony from another qualified expert who has examined the defendant").

---

was not the time . . . to raise new arguments"); Baez v. Commonwealth, 494 Mass. 1001, 1002 n.4 (2024) (declining to address "constitutional questions [that] were not properly before" single justice, where defendant failed to make these arguments in District Court).

A psychiatric examination, like other forms of discovery under rule 30 (c) (4), is "not a matter of right." Commonwealth v. Arriaga, 438 Mass. 556, 569 (2003). Rather, the defendant first must make a prima facie case of entitlement to rule 30 relief, after which the judge may permit appropriate discovery subject to protective conditions. See Mass. R. Crim. P. 30 (c) (4).

We consider first whether the defendant established a prima facie case before addressing the propriety of the court-ordered psychiatric examination.

a. Prima facie case for relief. As explained below, the defendant has established a prima facie case for relief by demonstrating that his aggregate sentence is presumptively disproportionate under art. 26.[5] Whether he has met his burden turns on the scope of art. 26 protections following our decision in Mattis, 493 Mass. 216. We therefore briefly summarize the governing sentencing framework before addressing the defendant's showing.

i. Presumptively disproportionate sentences post-Mattis. Under art. 26, a sentence constitutes cruel or unusual punishment if it is "so disproportionate to the crime" that it "shocks the conscience and offends fundamental notions of human

---

[5] The Commonwealth does not contest this showing.

dignity" (citation omitted). Commonwealth v. LaPlante, 482

Mass. 399, 403 (2019). See Diatchenko v. District Attorney for

the Suffolk Dist., 466 Mass. 655, 669 (2013) (Diatchenko I),

S.C., 471 Mass. 12 (2015). In Diatchenko I, supra at 671, we

held that a sentence of life without the possibility of parole

for a juvenile convicted of murder in the first degree violates

art. 26. Building on subsequent scientific developments, we

later extended related constitutional protections to emerging

adults -- individuals who were eighteen, nineteen, or twenty

years old at the time of the murder. See Mattis, 493 Mass. at

234-235. See also id. at 217 (defining "emerging adults" as

"those who were eighteen, nineteen, and twenty years of age when

they committed the crime"). As a result, emerging adults

convicted of murder in the first degree are entitled to parole

eligibility. See id. at 235-237.

These constitutional principles are not confined to murder

convictions. In Commonwealth v. Perez, 477 Mass. 677, 685-686

(2017) (Perez I), S.C., 480 Mass. 562 (2018), we held that a

juvenile's aggregate sentence for nonmurder offenses that

produces a later parole eligibility date than that applicable to

a juvenile convicted of murder is presumptively disproportionate

under art. 26. The reasoning of Perez I applies equally to

emerging adults. Compare Perez I, supra at 683 ("children are

constitutionally different from adults for purposes of

sentencing" [citation omitted]), with Mattis, 493 Mass. at 238 ("unique characteristics of emerging adults . . . render them constitutionally different from adults for purposes of sentencing" [quotations and citation omitted]).

Accordingly, an emerging adult's aggregate sentence for nonmurder offenses that delays parole eligibility beyond that applicable to an emerging adult convicted of murder is "presumptively disproportionate" under art. 26. Perez I, 477 Mass. at 685-686. In such circumstances, the offender is entitled to an individualized sentencing proceeding consistent with Miller v. Alabama, 567 U.S. 460 (2012), to determine whether "extraordinary circumstances" justify treating the emerging adult convicted of nonmurder offenses more harshly for parole purposes than an emerging adult convicted of murder. Perez I, supra at 686. See Miller, supra at 477-478 (requiring individualized sentencing that considers defendant's youth, background, and circumstances of offense).

ii. The defendant's showing. A defendant establishes a prima facie case for relief under rule 30 through affidavits and supporting documentation. See Mass. R. Crim. P. 30 (c) (4). Here, the defendant submitted an affidavit, the mittimus[6] for

_____

[6] "A mittimus is a ministerial document . . . executed on behalf of the court by a clerk, addressed to the sheriff who had custody of the accused during trial and to the future custodian (sheriff or superintendent of a correctional institution) of the

each offense of conviction, and Department of Correction records establishing his age and date of birth.  Those materials demonstrate that the defendant, an emerging adult at the time of the offenses, is serving an aggregate sentence of from thirty-one to forty-three years in State prison.  Had he been convicted of murder in the first degree, he would have been eligible for parole after fifteen years.  See Mattis, 493 Mass. at 237.

Because the defendant's aggregate sentence for nonmurder offenses requires more than twice as many years of incarceration before parole eligibility as would apply to an emerging adult convicted of murder, his sentence is presumptively disproportionate under art. 26.  On this undisputed record, the defendant therefore has established a prima facie case for relief under rule 30.

b.  Availability of court-ordered psychiatric examination. Once a prima facie showing is made, rule 30 authorizes a judge to permit appropriate discovery on "motion of any party," including the Commonwealth (emphasis added).  Mass. R. Crim. P. 30 (c) (4).  Although postconviction discovery often is sought by defendants to develop evidence otherwise "unknown to

---

prisoner, that . . . states what the sentence is, and states how many days of the sentence the prisoner is deemed to have served, commonly while awaiting trial and sentencing" (quotation and citation omitted).  Perez v. Commonwealth, 496 Mass. 381, 382 n.2 (2025).

the court" to support "an apparently meritorious claim"
(citation omitted), Commonwealth v. Daniels, 445 Mass. 392, 406
(2005), permitting appropriate discovery by the Commonwealth
ensures that resentencing decisions rest on accurate and
complete information, see Commonwealth v. Plasse, 481 Mass. 199,
206 (2019).[7]

Where, as here, the defendant relies on expert opinion
grounded substantially in recent personal interviews and
clinical judgment concerning his mental state and
rehabilitation, permitting the Commonwealth to obtain a
corresponding psychiatric examination serves that purpose.  Such
reciprocity helps ensure that the sentencing judge is not
presented with a one-sided expert narrative that cannot be
meaningfully tested through cross-examination alone.  Cf.
Ostrander, 441 Mass. at 353 (allowing trier of fact to hear
"countervailing expert views, based on similar testimonial
statements of a defendant" promotes fair result [citation
omitted]); Commonwealth v. Wayne W., 414 Mass. 218, 231 (1993)
(reciprocal psychiatric examination of defendant prevents "the

---

[7] Such information includes a defendant's psychological
functioning at the time of the offense, capacity for
rehabilitation, and postsentencing conduct, which bear on
whether extraordinary circumstances justify delaying parole
eligibility beyond that applicable to an emerging adult
convicted of murder.  See LaPlante, 482 Mass. at 404-406;
Commonwealth v. Costa, 472 Mass. 139, 147-149 (2015).

distorting effect on the fact finder's role" that might occur if only one party could introduce expert testimony on crucial issue).

The Commonwealth is not entitled to parity for its own sake. Rather, the motion judge permissibly concluded that fundamental fairness and accurate fact finding warranted affording the Commonwealth's expert a meaningful opportunity to evaluate the same subject matter underlying the defendant's expert opinion. That determination reflects the practical reality that expert conclusions derived from recent clinical interviews and professional judgment concerning a defendant's mental condition and rehabilitation cannot always be fully assessed through documentary evidence or cross-examination alone. See Ostrander, 441 Mass. at 354 ("in most instances the only means of rebuttal" of favorable psychological testimony is "other psychological testimony").

Our holding is limited. We do not suggest that a psychiatric examination is warranted whenever a defendant seeks resentencing or introduces generalized mitigation evidence. Instead, a motion judge acts within his or her discretion where, as here, the defendant's expert opinion rests substantially on personal interviews and clinical assessment addressing the defendant's psychological functioning -- a matter not readily

susceptible to meaningful assessment without comparable evaluation.

2. Utilization of rule 14.4 procedure. The defendant contends that the motion judge abused her discretion by relying on rule 14.4 to order a psychiatric examination, arguing that rule 14.4 governs only pretrial proceedings. This argument mischaracterizes the order.

Although the motion judge referenced the Commonwealth's analogy to rule 14.4, she did not treat that rule as an independent source of authority. Rather, in the absence of an explicit procedure under rule 30 addressing postconviction psychiatric examinations, the judge appropriately looked to rule 14.4 for guidance and adapted certain procedures to the rule 30 context. Cf. Commonwealth v. Teixeira, 475 Mass. 482, 490 (2016) (even where discovery is not explicitly authorized by statute, court's inherent powers include "authority to facilitate . . . discovery" [quotation and citation omitted]). In doing so, the judge retained authority to impose protective conditions tailored to postconviction discovery, including limitations on the scope of questioning and restrictions on the use of any statements obtained during the examination. See Mass. R. Crim. P. 30 (c) (4) (judge "may authorize such discovery as is deemed appropriate, subject to appropriate protective order"). Nothing in the order suggests that the

Commonwealth may use the defendant's statements for purposes beyond the resentencing proceeding, and rule 30 (c) (4) contemplates that discovery be conducted subject to such safeguards.  See id.

Adapting the procedures from rule 14.4 is consistent with the structure and origins of rule 30 itself.  Rule 30 is drawn in part from the American Bar Association's Postconviction Remedies Standards, which contemplate the use of techniques "specifically adapted" to assist courts in resolving postconviction claims.  4 American Bar Association, Standards for Criminal Justice, Postconviction Remedies Standard 22-4.5(a), at 22-46 (2d ed. 1986).  See Reporters' Notes to Rule 30, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 603 (LexisNexis 2025).  Under rule 14.4, a psychiatric examination based on a defendant's statements may be ordered where the defendant intends to offer expert testimony derived from those statements or where there is otherwise a reasonable likelihood that the defendant will do so.  See Mass. R. Crim. P. 14.4 (b) (1) (A).  Here, the motion judge implicitly made that finding, expressly anticipating the admission of Galvin's report and testimony at the resentencing hearing.[8]

---

[8] The defendant argues that he did not provide formal notice of an intent to rely on a psychiatric examination at the Miller hearing.  He does not, however, address whether -- notwithstanding the absence of a more formal notice -- there was

In these circumstances, the motion judge acted well within the "broad discretion" afforded by rule 30 (c) (4) (citation omitted).  Commonwealth v. Goparian, 496 Mass. 348, 364 (2025).  Her adaptation of rule 14.4 procedures was appropriate given that both rules serve the "truth-seeking function" of criminal adjudication.  Commonwealth v. Hanright, 465 Mass. 639, 644 (2013) (rule 14).  See Daniels, 445 Mass. at 406 (rule 30).

Conclusion.  Resentencing proceedings, like original sentencing hearings, permit consideration of a broad range of information bearing on the defendant's characteristics, background, and prospects for rehabilitation.  See Commonwealth v. Costa, 472 Mass. 139, 147 (2015).  Where a defendant elects to present mental health evidence derived from a personal examination, allowing a limited reciprocal evaluation serves the

---

a reasonable likelihood that he would introduce such evidence. See Mass. R. Crim. P. 14.4 (b) (1) (A).  Nor has he included the record materials necessary to assess whether the motion judge's implicit finding on that point was clearly erroneous.  See Sabree v. Commonwealth, 479 Mass. 1006, 1007 (2018) ("A petitioner must also create a record to substantiate his allegations").

The record instead reflects that the defendant obtained expert funds in connection with his resentencing motion and disclosed his expert's report to the Commonwealth shortly after it was prepared.  On this record, we cannot conclude that the motion judge erred in finding a reasonable likelihood that the defendant would offer expert testimony at the Miller hearing. See Commonwealth v. Woods, 419 Mass. 366, 371 (1995) ("The burden is on the appellant to ensure that an adequate record exists for an appellate court to evaluate").

societal interest of ensuring a "fair inquiry" into this critical issue (citation omitted).  Wayne W., 414 Mass. at 231.

Here, the motion judge did not abuse her discretion or otherwise err in permitting the Commonwealth to obtain a psychiatric examination where there was a reasonable likelihood that the defendant would rely on psychological expert testimony derived from his own statements.  The single justice likewise did not abuse her discretion or err in denying the defendant's petition.

Judgment affirmed.